IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BUTLER B. BROWDER, | * | |
| | * | |
| Plaintiff, | * | |
| | * | CIVIL ACTION NO. 2:07-CV-391-ID |
| v. | * | |
| | * | CIVIL ACTION NO. 2:07-CV-546-MEF |
| JOHN E. POTTER, USPS | * | |
| POSTMASTER GENERAL, | * | |
| | * | |
| Defendants.[1] | * | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

I.      STATEMENT OF THE CASE

Butler B. Browder, in his two instant judicial complaints, together asserts that he has

been the victim of EEO-type race and reprisal discrimination and that he has also been denied

rights under the Family Medical Leave Act (FMLA) and suffered reprisal for their exercise.   He

asserts that causes of action lie under Title VII of the Civil Rights Act of 1964 and 29 U.S.C. §

2601 et seq. and, further, that the Court enjoys subject matter jurisdiction pursuant to 28 U.S.C. §

1331, 29 U.S.C. § 2617(a)(2), and 29 U.S.C. § 2000-e(5).  For relief, Plaintiff seeks

---

[1] It appears that Plaintiff may also be attempting to sue individually Charlie J. (C.J.) Harris, Manager, Distribution Operations, Huntsville, AL, Plant; Rod Carleton, Plant Manager, Montgomery, AL, Processing & Distribution Center; and Joey Sherman, Acting Postmaster, Mobile, AL.  To the extent that Plaintiff may be attempting to sue postal management officials in their individual capacities in the instant actions, these postal management officials are improper party defendants, pursuant to 42 U.S.C. § 2000e-16(c), and they should be dismissed.  "'The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act.'" *Hinson v. Clinch County, Georgia Board of Education*, 231 F.3d 821, 827 (11th Cir. 2000), *quoting, Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991).

reinstatement, back pay, compensatory damages, punitive damages, liquidated damages,

injunctive and declaratory relief, attorney's fees, and costs.

## II.    STATEMENT OF UNDISPUTED FACTS

1.    On February 2, 2006, a Notice of Proposed Removal was served on Butler B. Browder

delineating specific allegations of misconduct, including both (as stated in Charge 1 of the

Notice) that Browder twice claimed paid sick leave when he was not ill in order to attend

football games and (as stated in Charge 2 of the Notice) that Browder failed to report to work as

directed first on January 10, 2006, and then on January 17, 2006, for an investigative interview

about the substance of Charge 1.  (Exhibit 1 to the Eaves Declaration).

2.    Browder filed an administrative EEO complaint over his removal in which he alleged

race and reprisal discrimination.  (Exhibit 2 to the Eaves Declaration).   That complaint was

determined by the Agency to constitute a "mixed case" complaint.  Mixed cases arise in

connection with administrative actions that can be appealed to the Merit Systems Protection

Board (MSPB or Board) and concerning which allegations of EEO-type discrimination are also

being brought.  In such cases, if an employee files a formal EEO complaint first, the filing is

denominated a "mixed case *complaint*."  If, on the other hand, the employee first pursues an

appeal with the MSPB, the matter is called a "mixed case appeal."  So long as the MSPB does

enjoy jurisdiction with respect to the action being appealed, only the MSPB is empowered to

conduct an administrative hearing on all issues that the employee seeks to prosecute, including

the EEO claims.  *See* 29 C.F.R. § 1614.302 applying 5 U.S.C. § 7702(a)(1)("the Board . . . shall

decide both the issue of discrimination and the appealable action  . . . .").

3.    After the Agency's investigation of Browder's EEO complaint, the Agency issued a July

31, 2006, Final Agency Decision finding no discrimination with respect to Browder's removal

and informing him of his right either to seek an administrative hearing before the MSPB or to

proceed to bring his EEO contentions to federal district court.  (Exhibit 2 to the Eaves

Declaration).

4.      Browder, in fact, did appeal to the MSPB on August 21, 2006.  (Exhibit 3 to the Eaves

Declaration).

5.      In the course of processing the appeal, on November 8, 2006, MSPB Administrative

Judge (AJ) Stuart A. Miller ordered the parties to submit prehearing submissions, which were to

include the factual and legal contentions of the parties.   (Exhibit 4 to the Eaves Declaration).

Browder, in his capacity as the Appellant, filed with the Board a statement of issues that he

intended to bring before the MSPB for adjudication.  Browder's statement specifically raised

allegations of Family Medical Leave Act (FMLA) violations with respect to the disciplinary

specifications alleging that Appellant failed to follow orders when he failed to report as directed

for investigative interviews on January 10 and 17, 2006.  See ¶¶ 1 and 3 within the document

(Exhibit 5 to the Eaves Declaration).  The MSPB has jurisdiction to adjudicate FMLA defenses

in connection with employment actions otherwise appealable to the Board.  *See, e.g., Ellshoff v.*

*Department of the Interior*, 54 MSPR 972 (1997).

6.      While Browder was pursuing his regulatory avenues of redress, his Union, the National

Postal Mail Handlers Union (NPMHU), was simultaneously prosecuting a contractual grievance

on his behalf that was decided through arbitration on November 29, 2006.  (Exhibit 1 to the

Marcoux Declaration).  Arbitrator Thomas H. Pigford determined in that arbitral award at page 7

that "attendance at . . . football games by Grievant [Browder] while in a sick leave status . . . are

the most serious charges" and that "if the proof revealed Grievant intentionally requested sick

leave for the purpose of attending these games when he was not ill[,] that is grounds for

discharge." The Arbitrator determined at pages 8-9 of the award that he was "persuaded that the Grievant improperly used sick leave to attend these athletic events when, in fact, he was not sick" and then the Arbitrator sustained Browder's discharge.

7.      On December 4, 2006, Browder and the Postal Service entered into a settlement agreement, the terms of which were taken by, read aloud by, and so entered into the MSPB record by AJ Miller.  Among other terms, the agreement at pages 5 and 7 of its transcription provided for the rescission of the removal action taken against Browder, required Browder to rather retire from the Postal Service under the conditions set by the agreement, and also provided that the MSPB appeal from the discharge—as well as all pending individual EEO complaints and all pending individual grievances filed by Browder—were settled.  (Exhibit 6 to the Eaves Declaration).

8.      That same day AJ Miller issued an initial decision finding the settlement agreement to be valid on its face, entering the settlement agreement into the record, and dismissing the underlying MSPB appeal.   The decision informed Browder that he had only certain appeal rights from this ruling, either to the Full Board or to the United States Court of Appeals for the Federal Circuit. (Exhibit 7 to the Eaves Declaration).

9.      Also on December 4, 2006, Browder attempted to file with the AJ a pleading in which Browder sought to have the settlement agreement "set aside."  (Exhibit 8 to the Eaves Declaration).   He additionally left a December 4, 2006, voice mail message with Agency Counsel Kathy Janowicz, in which he states that he is trying to contact the MSPB AJ in order to see if he "can vacate" the settlement agreement entered into earlier that day.  (Exhibit 9 to the Eaves Declaration).

10.    Browder afterwards filed on December 12, 2006, a petition for review to the Full Board

of the MSPB, in which he asked the Board to find that the settlement agreement was invalid.

(Exhibit 10 to the Eaves Declaration).  On March 6, 2007, the Full Board issued a decision

finding no reason to reverse the AJ's finding that a valid settlement had been concluded and,

therefore, denied Browder's petition for review.  The Board decision informed Browder of his

right to seek review of its decision by the United States Court of Appeals for the Federal Circuit,

the sole statement of appeal rights afforded.  (Exhibit 11 to the Eaves Declaration).

11.    Browder subsequently sought to file an April 13, 2007, appeal of the MSPB Final Order

with the Office of Federal Operations (OFO) of the Equal Employment Opportunity Commission

(EEOC).  (Exhibit 12 to the Eaves Declaration).  The EEOC issued a Decision dated May 15,

2007, holding that the EEOC lacked jurisdiction to review procedural matters decided by the

MSPB in advance of reaching any EEO issues and, further, that the EEOC had no jurisdiction

over settlement agreements entered into the record of the Board.  (Exhibit 13 to the Eaves

Declaration).

12.    Browder sent a May 29, 2007, motion to the EEOC, requesting that it reconsider its

declination to review the MSPB ruling on the validity of the settlement agreement that was

entered into during the Board proceedings.  (Exhibit 14 to the Eaves Declaration).  The EEOC

responded with a June 12, 2007, letter finding that the requested reconsideration was not

provided for by the EEOC regulations and that no further action would be taken by the EEOC.

(Exhibit 15 to the Eaves Declaration).

### III.     ARGUMENT

A.     Plaintiff's Claims Are **All** Barred By The December 4, 2006, MSPB Settlement Agreement.

    1.     The MSPB Issued a Final Order Finding that Plaintiff Entered into a Valid and Binding Settlement Agreement.

Despite the Plaintiff's vehement opposition to the validity of the settlement agreement regarding his discharge that was entered into the MSPB record, the simple facts remain that the AJ found the agreement to be valid on its face and so gave it effect, and that determination was upheld by the Full Board in the face of Plaintiff's petition to the Board to find otherwise. That determination constituted the Board's final action on the question of the agreement's validity. Further, despite being informed of his right to appeal to the United States Court of Appeals for the Federal Circuit on two separate occasions, Plaintiff, as he noted in his ill-fated effort to appeal this question to the EEOC (Exhibit 12 to the Eaves Declaration), expressly eschewed following the one proper course, appeal to the Federal Circuit, of which he was twice notified.

    2.     The Federal Circuit is the Only Court with Jurisdiction to Review the MSPB Order Sustaining the Validity of the Settlement Agreement.

Prior to 1982, 5 U.S.C. § 7703(b)(1) provided that a final decision of the MSPB was appealable to "the Court of Claims or a United States court of appeals." Recognizing that this scheme of review threatened, at the judicial level, the uniformity of interpretation which the creation of the MSPB was intended to foster at the administrative level, Congress enacted the Federal Courts Improvement Act of 1982 (FCIA), which amended § 7703(b)(1), to substitute the Court of Appeals for the Federal Circuit as the only judicial body to which a non-mixed MSPB case could be appealed. Furthermore, the Act provides, 28 U.S.C. § 1295:

> (a)  The United States Court of Appeals for the Federal Circuit
> shall have **exclusive jurisdiction** -

\* \* \* \* \* \*

> (a) of an appeal from a final order or final decision of
> the Merit Systems Protection Board pursuant to section
> 7703(b)(1). . . of Title 5.
> [Bold added.]

Thus, it is clear that only the Federal Circuit has jurisdiction to review a particular class of

MSPB decisions.

The legislative history of the FCIA explains the rationale behind the creation of the

Federal Circuit, an appeals court of national jurisdiction:

> [T]here are areas of the law in which the appellate courts reach
> inconsistent decisions on the same issue, or in which - although the
> rule of law may be fairly clear - courts apply the law unevenly
> when faced with the facts of individual cases.  The difficulty here
> is structural.  Since the Supreme Court's capacity to review cases
> cannot be enlarged significantly, the remedy lies in some
> reorganization at the intermediate appellate level . . . .
>
> The creation of a new Court of Appeals for the Federal Circuit
> through a merger of the Court of Claims and the Court of Customs
> and Patent Appeals (CCPA) addresses these structural problems.  -
> *The Act provides a new forum for the definitive adjudication of
> selected categories of cases.*  At the same time, it improves the
> administration of the system by reducing the number of decision-
> making entities within the federal appellate system.
>
> Testimony on the Federal Courts Improvements Act supported the
> premise that the capacity of the federal appellate courts to provide
> a nationwide answer to legal questions could be expanded through
> the establishment of new courts of appeals *whose jurisdiction is
> defined on a topical rather than a geographical basis.  The
> creation of the Court of Appeals for the Federal Circuit provides
> such a forum for appeals from throughout the country in areas of
> the law where Congress determines that there is special need for
> national uniformity.*
>
> [S. Rep. No. 275, 97th Cong., 2d Sess. 3-4, reprinted in 1982 U.S.
> Code Cong. & Ad. News 11, 13-14 (emphasis added) (footnotes
> omitted).]

While the Federal Circuit has clearly held that it does not have jurisdiction to hear the

*merits* of "mixed" cases heard by the MSPB, *Williams v. Department of the Army*, 715 F.2d 1485

(Fed. Cir. 1983) (*en banc*), it has ruled with equal clarity that procedural or threshold matters, which arise before the merits of the discrimination claim are reached, are properly appealed only to the Court of Appeals for the Federal Circuit.  *Ballentine v. Merit Systems Protection Board*, 738 F.2d 1244 (Fed. Cir. 1984).  In *Ballentine*, the court held:

> [I]t is clear that the judicially reviewable action by the MSPB which makes an appeal a "case of discrimination" under § 7703(b)(2) that can be filed in district court is that the MSPB has decided "both the issue of discrimination and the appealable action. . . ." § 7702(a)(1).  When an appeal has been taken to the MSPB, **until** the discrimination issue and the appealable action have been decided **on the merits** by the MSPB, *an appellant is granted no rights to a trial de novo in a civil action under § 7702 or § 7703*.  Yet, threshold issues such as the MSPB's own jurisdiction arise continually on appeal to this court, and we have taken jurisdiction over these cases. . . .  [Bold added.]

738 F.2d at 1246-47 (Emphasis supplied.)

Seeing no evidence "that Congress intended that no review exist for procedural or threshold matters determined by the MSPB," *id.*, the court further found no evidence in the legislative histories of these statutes to suggest anything, "other than that jurisdiction be exercised by this court under § 7703(b)(1) unless and until the right of a petitioner under § 7703(b)(2) to a trial de novo on the merits of a case is invoked. *Ballentine*, 738 F.2d at 1247. The court then concluded the pertinent aspect of its analysis by stating:

> The language of § 7703(b)(1), as discussed in *Williams*, itself strongly suggests that until the merits of a "mixed" discrimination case are reached by the MSPB, procedural or threshold matters, not related to the merits of a discrimination claim before the MSPB, may properly be appealed to this court. *As Williams noted, discrimination issues may be abandoned during MSPB proceedings or simply not appealed*.  715 F.2d at 1491. *See also Meehan v. United States Postal Service*, 718 F.2d 1069, 1074 (Fed. Cir. 1983).  Therefore, our exercise of jurisdiction over MSPB decisions until issues touching the merits of a discrimination claim are appealed comports with the intent of § 7703(b)(1) and (2) and also allows the application of a unified body of case law concerning issues like that actually on appeal here, i.e., **the**

> **jurisdiction of the MSPB itself**, or perhaps questions as to
> whether good cause has been shown for the waiver of a filing
> deadline.  As Judge Miller noted in his dissenting opinion in
> *Grenando v. Department of Justice*, 721 F.2d 804 (Fed. Cir. 1983),
> to hold otherwise would result not only in a waste of time and
> resources, *but also in lack of uniformity as each of some 94*
> *different federal district courts (with appeals to their respective*
> *circuits) proceeds to define the metes and bounds of MSPB*
> *jurisdiction.  Congress sought to avoid such consequences by*
> *consolidated appellate jurisdiction over MSPB cases in a single*
> *court - the Federal Circuit.*  [721 F.2d at 810, footnote omitted.]

*Ballentine* ,738 F.2d at 1247 (Emphasis supplied.)

In a case which made clear that certain classes of federal employees do not enjoy a right

of judicial review respecting personnel actions adverse to them, the Supreme Court has had

occasion to affirm the superior standing of the Court of Appeals for the Federal Circuit under §

7703(b)(1) in interpreting the CSRA.  *United States v. Fausto*, 484 U.S. 439 (1988).  Noting that

Congress was cognizant of "patchwork" administrative and judicial review of matters involving

federal employment, the Court stated that:

> Congress responded to this situation by enacting the CSRA, which
> replaced the patchwork system with an integrated scheme of
> administrative and judicial review, designed to balance the
> legitimate interest of various categories of federal employees with
> needs of sound and efficient administration.

*Fausto*, 484 U.S. at 445.  In this light, the Court held that for non-preference eligible federal

employees to enjoy direct access to the judiciary would undermine one of the two principle

structural elements of the CSRA: 484 U.S. at 449:

> The second structural element [of the CSRA] is the **primacy** of the
> MSPB for administrative resolution of disputes over adverse
> personnel action, 5 U.S.C. sections 1205, 4303(e)(3), 7513(d),
> 7701 (1982 ed. and Supp. IV), and the **primacy** of the United
> States Court of Appeals for the Federal Circuit *for judicial review*,
> section 7703.  This enables the development, through the MSPB,
> of a unitary and consistent Executive Branch position on matters
> involving personnel action, avoids an "unnecessary layer of
> judicial review" in lower federal courts, and "[e]ncourages more

> consistent judicial decisions. . . ." S. Rep. No. 95-969, at 52; *see*
> *Lindahl v. OPM*, 470 U.S. at 797-798.

*Fausto*, 484 U.S. at 445 (Emphasis supplied.)

Throughout *Fausto*, the Supreme Court evinced its concern that "the consistency of interpretation by the Federal Circuit envisioned by § 7703 of the Act" not be undermined. 484 U.S. at 450. For one of the primary fruits of the CSRA judicial review scheme which functions as Congress intended is that the situation would not arise in which "an agency office would not know whether to follow the law of its geographical circuit or the conflicting law of the Federal Circuit."[2] *Id.*

In this regard, it should be noted by the Court, as it was by the EEOC (Exhibit 13 to the Eaves Declaration), that both MSPB decisions on the validity of the settlement agreement gave *no* appeal rights to a federal district court, but only to the Federal Circuit—the judicial appellate avenue that has **not** been pursued by Plaintiff and, in fact, has rather been purposely avoided by him. *See Oja v. Dept. of the Army*, 405 F.3d 1349, 1355 n. 2 (Fed Cir. 2005) ("First, Mr. Oja's

---

[2]   Prior to 1982 and the advent of "exclusive" Federal Circuit jurisdiction under § 7703, some civil service questions were addressed by the geographical circuit courts with outcomes which varied from the holdings of the Federal Circuit. The MSPB at one point did follow the more stringent conflicting law of a geographical appellate court which, under applicable EEO venue provisions, possibly could review the substance of civil service law in a mixed case brought under 5 U.S.C. § 7702(b)(2). In a decision which presaged *Fausto*, however, the Board reversed that policy. *See Afifa v. Department of Interior*, 33 M.S.P.R. 282 (1987). In *Afifa*, the MSPB determined that it "is obliged to follow the precedent of the Federal Circuit Court of Appeals . . . even though another appellate court may actually review our decision." *Id.* As its justification, which virtually tracks the reasoning of *Fausto*, the Board held:

> This policy is necessary to the Board's further development of a
> coherent, uniform civil service jurisprudence. As noted above, an
> appellant in a mixed case has a variety of options by which to appeal a
> discrimination claim; under our previous policy it was often unclear to
> which court the appellant would appeal and, thus, which circuit's
> precedent we would apply. By applying the law of the Federal Circuit in
> this and all such future cases, the Board will bring a measure of
> consistency to a traditionally inconsistent area of federal employment
> law. *Id.*

EEOC filing cannot be considered a petition for review by the Federal Circuit and instead

implies the opposite – that Mr. Oja specifically sought to avoid review by this court.").

    3.   <u>The MSPB Settlement of Plaintiff's Discharge is Valid as a Matter of Res Judicata and/or Collateral Estoppel and so Bars the Subject Matter of both of his Judicial Complaints that Seek Relief for that Same Discharge</u>.

As may be ascertained from the face of his judicial complaints, Plaintiff is not attempting

in any manner to challenge the validity of the settlement agreement but seeks rather to only

address the merits of his discharge that were concluded by the settlement.  He, therefore,

ignores—and, thus, seeks to avoid—the application of the settlement to his claims that he has

brought in his two judicial complaints concerning Plaintiff's self-same termination.  At most, his

actions are only an implicit attack upon the finality and binding force of the MSPB decision

affirming the validity of the settlement agreement.

That effort, however, is futile.  As stated in *Astoria Federal Savings & Loan Ass'n v. Solimono*, 501 U.S. 104, 107-08 (1991):

> We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality.  "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose."  *United States* v. *Utah Construction & Mining Co.*, 384 U.S. 394, 422, (1966).  Such repose is justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.  To hold otherwise would, as a general matter, impose unjustifiably upon those who have already shouldered their burdens, and drain the resources of an adjudicatory system with disputes resisting resolution.  *See Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 326, (1979).  The principle holds true when a court has resolved an issue, and should do so equally when the issue has been decided by an administrative agency, be it state or federal, see *University of Tennessee* v. *Elliott*, 478 U.S. 788, 798, 92 L. Ed. 2d 635, 106 S. Ct. 3220 (1986), which acts in a judicial capacity.

This Federal Circuit has long implemented these understandings with respect to the adjudications of a number of federal agencies, including the MSPB.  "Under the doctrine of res judicata, a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action."  *Stearn v. Dep't of the Navy*, 280 F.3d 1376, 1380 (Fed Cir. 2002) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981)).  Such a prior decision by an administrative tribunal is no less effective as res judicata than one by a judicial tribunal.  *Cook v. Principi*, 318 F.3d 1334, 2336 (Fed. Cir. 2002) (*en banc*) ("Principles of finality and res judicata apply to agency decisions that have not been appealed and have become final.").  As the Federal Circuit held long ago, "this court has jurisdiction to review decisions on threshold issues such as the MSPB's jurisdiction or, in this case, *res judicata*."  *Spears v. MSPB*, 766 F.2d 520, 521 (Fed Cir. 1985) (finding in a matter once appealed to the MSPB without prosecution of EEO claims, that the case was res judicata when the appellant sought to return to the Board anew to prosecute those claims anew and the EEOC regulations that appeared to allow such were invalid.).  *See also Gibson v. USPS and APWU*, 380 F.3d 886, 889 (5th Cir. 2004) ("MSPB decisions warrant application of the doctrine of res judicata" . . . and the "failure to appeal to the Federal Circuit does not alter our conclusion that the MSPB acted in a judicial capacity.").  Under these principles, the Board's 2006 decision—which found the settlement agreement settling the issues connected to Plaintiff's discharge to be valid—is res judicata.

And since the settlement addresses the same nucleus of operative facts presented by the judicial claims, i.e., whether Plaintiff was fired due to animus to his race or protected EEO activity and also whether his discharge was based upon the assertion of rights under the FMLA

and retaliation against him for that assertion, these judicial prosecutions are themselves barred by

that settlement as a matter of either res judicata or collateral estoppel.  *See Adams v. Southern*

*Farm Bureau Life Ins. Co.*, No. 06-13162, 2007 U.S. App. LEXIS 17624, at *2 (11th Cir. July

25, 2007) (affirming the district court's decision and holding, *inter alia*, that appellants' claims

were barred by the doctrine of res judicata when the claims fell within the scope of an earlier

settlement); *In Re Martin*, 490 F.3d 1272 (2007) (holding that the doctrine of res judicata

precluded a party from re-litigating defenses waived in the settlement agreement, and finding

that for purposes of res judicata, the order approving the settlement agreement provided a final

determination on the merits); *Phillips v. State of Georgia*, No. 15981, 2007 U.S. App. LEXIS

17423, at *3-4 (11th Cir. July 19, 2007) (unpublished opinion) (affirming the district court's grant

of summary judgment, and concluding that plaintiff's claims were barred by his settlement

agreement).

B.     Alternatively, Even If The FMLA Claims Were Not Barred By The Settlement, Those
       Claims Would Still Have To Be Dismissed Because Plaintiff Cannot Demonstrate That
       He Suffered Any Injury Due To The Alleged FMLA Violations.

       The FMLA provides at 29 U.S.C. § 2617(a)(1)(A)(i)(I) that "[a]ny employer who violates

[the FMLA] shall be liable to any eligible employee affected . . . for damages equal to . . . the

amount of . . . any wages, salary, employment benefits, or other compensation denied or lost to

such employee *by reason of the violation* . . . ."  Section 2617(a)(1)(B) further states that a court

may afford "such equitable relief as may be appropriate."

       As noted in ¶ 6 of the statement of undisputed facts, while Plaintiff was pursuing his

regulatory avenues of redress, his Union was simultaneously prosecuting a contractual grievance

on his behalf that was decided through arbitration on November 29, 2006.  The Arbitrator

determined in that arbitral award at page 7 that "attendance at . . . football games by Grievant

[Browder] while in a sick leave status . . . are the most serious charges" and that "if the proof revealed Grievant intentionally requested sick leave for the purpose of attending these games when he was not ill[,] **that is grounds for discharge**."  Such employee dishonesty, he held, "is grounds for discipline even when progressive discipline has not occurred."[3]  The Arbitrator determined at pages 8-9 of the award that he was "persuaded that the Grievant improperly used sick leave to attend these athletic events when, in fact, he was not sick" and then the Arbitrator—referring specifically at the end of his discussion on page 9 to Plaintiff's utilization "of sick leave to attend two separate football games"—sustained Browder's discharge.

Arbitral awards, in accordance with Federal Circuit precedent, are properly afforded collateral estoppel effect.  *See Kroeger v. USPS*, 865 F.2d 235, 238-40 (Fed Cir. 1988) (including cases cited within); a*ccord Greenblat v. Drexel Burnham Lambert Inc,* 763 F.2d 1352, 1360 (11th Cir. 1985).  The MSPB affords collateral estoppel effect to the finding of postal arbitrators both on the issue of liability and penalty determinations, so long as a holding on the latter does not offend affirmative Board precedent.  *Farrelly v. USPS*, 86 MSPR 230 (2000).  Thus, it is clear that the arbitral holding that Plaintiff was properly discharged for his sick leave misuse alone is entitled to collateral estoppel.[4]

---

[3]  As the Arbitrator noted at the end of his award on page 9 (Exhibit 1 to the Marcoux Declaration), Plaintiff did have prior elements of discipline, a letter of warning and a seven-day No-Time-Off suspension, the equivalent of an actual suspension.

[4]  To be clear, the Defendants are not asking for collateral estoppel to be applied to any arbitral holding on the FMLA issue itself, express or implicit, believing such to probably barred by *Barrentine v. Arkansas-Best Freight System Inc.* 450 U.S. 728 (1981).  The arbitral holding for which the Defendants argue preclusive effect is that Plaintiff's sick leave derelictions in connection with the football games *alone* justified his removal as a matter of "just cause," a contract interpretation not requiring any reference to the FMLA and within the arbitrator's primary competence as expositor of the meaning of the collective bargaining agreement.  *Cf. Owens v. Texaco*, 857 F.2d 262, 265 (5th Cir. 1988) ("[U]nder the *Steelworkers Trilogy*, the arbitral decision is final and binding to the extent it resolves questions of contractual rights" . . . [and thus "t]he district court was bound by the arbitrator's interpretation of the bargaining agreements and status of the parties.")

14

Since it is established that Plaintiff's sick leave misuse alone merited his termination, and since his FMLA claims rest solely upon his refusal to return to duty while on FMLA leave in order to participate in two separately-set investigative interviews, he cannot meet the statutory elements necessary to his FMLA claim.  In short, he cannot show that his removal led to "wages, salary, employment benefits, or other compensation denied or lost to such employee ***by reason of the* [FMLA] *violation*"** or that equitable relief in the nature of a reinstatement is "appropriate" when other, wholly legal bases caused his discharge.  *Cf.  Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989) ("We hold that when a plaintiff in a Title VII case proves that her gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account.").

## IV.  CONCLUSION

For the foregoing reasons, Defendant respectfully requests that he is entitled to, and the Court should grant, judgment in his favor, with the costs of the litigation taxed to Plaintiff.

Respectfully submitted this 28th day of August, 2007.

                              LEURA G. CANARY
                              United States Attorney


                         By: /s/R. Randolph Neeley
                              R. RANDOLPH NEELEY
                              Assistant United States Attorney
                              Bar Number: 9083-E56R
                              Attorney for Defendant
                              Post Office Box 197
                              Montgomery, AL  36101-0197
                              Telephone No.: (334) 223-7280
                              Facsimile No.: (334) 223-7418


OF COUNSEL:

KATHY L. JANOWICZ
Attorney
U.S. Postal Service
225 N. Humphreys Blvd.
Memphis, TN 38166-0170
(901) 747-7321 (Phone)
(901) 747-7371 (Fax)

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2007, I electronically filed the foregoing with

the Clerk of the Court using the CM/EDF system which will send notification of such

filing to plaintiff's attorney, K. Anderson Nelms.  I also certify that i have served a copy

of the foregoing upon the plaintiff by placing same in the United States Mail, properly

addressed to 4504 Sunnybrook Drive, Montgomery, AL 36108.


                                        s/R. Randolph Neeley
                                        Assistant United States Attorney